UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUDOLPH WHITE; ROBERT COX; KENLEY EXUME; LESLIE GOOD; GIUSEPPE BARLETTA; COMMONWEALTH SECOND AMENDMENT, INC.; FIREARMS POLICY COALITION, INC. and SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>-against-<br><br>MICHAEL COX, in his official capacity as police commissioner of the city of Boston,<br><br>Defendant. | Civil Action No.<br>1:23-cv-12031-IT<br><br>AMENDED COMPLAINT |

Plaintiffs allege as follows:

1.      This lawsuit concerns substantial and untenable delays in the Boston Police Department's processing of firearms license applications. After individuals apply for licenses, the Department's Licensing Unit makes them wait for many months before it provides them with appointments at which they can provide their fingerprints. Massachusetts law prohibits the issuance of firearms licenses before State Police complete a background check based on those fingerprints, and thus, the delay in obtaining fingerprints directly delays the ultimate issuance of a license. Furthermore, when individuals apply to renew licenses, the Licensing Unit similarly waits many months before it begins to actually process their applications. The wait time for moving applications forward appears to be more than six months.

2.      Previously, in 2020 and 2021, the Licensing Unit made individuals seeking licenses wait for months on a "wait list" before they could submit applications—a practice it abandoned in response to a prior lawsuit by some of the Plaintiffs here. *See Alves, et al. v.*

*McNamara, et al.*, No. 1:20-cv-11933-DPW (D. Mass. filed Oct. 27, 2020). Now, the Licensing Unit is accepting individuals' license applications without significant delay, but is making them wait for many months to submit samples of their fingerprints. Thus, while it has purportedly abandoned its use of a "wait list" to *submit* applications, the Licensing Unit is still using the equivalent of a "wait list" to prevent people from *completing* the application process. Furthermore, in the absence of relief from this Court, the Licensing Unit is likely to again develop unjustified and untenable delays in the future.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. §§ 2201 & 2202.

4.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant acted, acts and threatens to act under the color of laws, policies, customs and/or practices of the Commonwealth of Massachusetts, and further, because Defendant has done so, continues to do so and threatens to do so within the Commonwealth of Massachusetts.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (b)(2).

6.     The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(C) because the only parties that reside in the District of Massachusetts reside in the Eastern Division.

## PARTIES

7.     Plaintiff Rudolph White ("White") is a natural person residing in the City of Boston and County of Suffolk, in the Commonwealth of Massachusetts.

8.     Plaintiff Robert Cox ("Cox") is a natural person residing in the City of Boston and County of Suffolk, in the Commonwealth of Massachusetts.

9.     Plaintiff Kenley Exume ("Exume") is a natural person residing in the City of Boston and County of Suffolk, in the Commonwealth of Massachusetts.

10.     Plaintiff Leslie Good ("Good") is a natural person residing in the City of Boston and County of Suffolk, in the Commonwealth of Massachusetts.

11.     Plaintiff Giuseppe Barletta ("Barletta") is a natural person residing in the City of Boston and County of Suffolk, in the Commonwealth of Massachusetts.

12.     Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal office in the City of Framingham and County of Middlesex, in the Commonwealth of Massachusetts.

13.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada (City of Las Vegas).

14.     Plaintiff Second Amendment Foundation ("SAF") is a not-for-profit corporation organized under Washington law with its principal office in the City of Bellevue and County of King, in the State of Washington.

15.     Defendant Michael Cox ("Commissioner Cox") is sued in his official capacity as the Police Commissioner of the City of Boston, responsible for general law enforcement functions within the City of Boston, including the administration of firearms licensing, as more specifically alleged herein. Commissioner Cox's business address is Boston Police Department, 1 Schroeder Plaza, Boston, MA 02120, which is located in the County of Suffolk.

**CONSTITUTIONAL PROVISIONS**

16.     The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

U.S. Const. amend. II.

17.     The Fourteenth Amendment provides in pertinent part:

> No state shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall
> any state deprive any person of life, liberty, or property, without
> due process of law; nor deny to any person within its jurisdiction
> the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

18.     The Second Amendment "guarantee[s] the individual right to possess and carry

weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

19.     The Supreme Court has expressly "h[e]ld . . . that the Second and Fourteenth

Amendments protect an individual's right to carry a handgun for self-defense outside the home."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2122 (2022).

20.     The Second Amendment is "fully applicable to the States." *McDonald v. City of

Chicago*, 561 U.S. 742, 750 (2010); *see also id.* at 805 (Thomas, J., concurring).

21.     The Second Amendment invalidates laws and other state action that burden the

right to keep and bear arms, unless "the government [can] demonstrate that the regulation is

consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

22.     Laws that impose prior restraints on the exercise of constitutional freedoms,

including the right to bear arms, must "contain only 'narrow, objective, and definite standards.'"

*See Bruen*, 142 S. Ct. at 2138 n.9 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151

(1969)). Pertinently, such laws must "provide for an effective limitation on the time within which

the licensor's decision must be made." *See FW/PBS, Inc. v. City of Dallas*, 439 U.S. 215, 229

(1990). In *Bruen*, the Court specifically observed that "lengthy wait times in processing license

applications" were subject to constitutional challenge. *See Bruen*, 142 S. Ct. at 2138 n.9.

## PERTINENT STATUTES AND REGULATIONS

23.     In Massachusetts, it is unlawful to "own or possess" any handgun, rifle or shotgun unless one holds either a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). It is also illegal to possess "ammunition" unless one holds either a FID or LTC. The essential distinction between a FID and a LTC is that a LTC also authorizes an individual to carry a handgun in public. *See* M.G.L. c. 140, §§ 129B-129C; *id.* c. 269, § 10(a), (h)(1). Note that Massachusetts statutes define the term "firearm" to *not* include ordinary rifles and shotguns. *See id.* § 121. In accordance with both custom and federal law, this Complaint uses the generic term "firearm" to include rifles and shotguns, as well as handguns. *See* 18 U.S.C. § 921(a)(3).

24.     The licensing statutes provide that an individual seeking a FID or LTC "may submit . . . an application" to their designated "licensing authority," and that the licensing authority "shall issue" the license unless the applicant does not meet the statutory requirements. Normally, a person's "licensing authority" is the chief police officer in the city or town where they reside or have a place of business. *See* M.G.L. c. 140, §§ 121, 129B(1), 131(d).

25.     Among other things, a person seeking a FID or LTC must meet requirements related to their age, criminal background, and mental fitness.  *See* M.G.L. c. 140, § 129B(1)(i)-(xi); *id.* § 131(d)(i)-(x). Furthermore, licensing authorities can deny FIDs and LTCs to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." *See id.* § 129B(1½); *id.* § 131(d). A person must also complete state mandated training. *See id.* § 131P(a). A person seeking a LTC must also complete a personal interview. *See id.* § 131(d).

26.     The licensing statutes require a licensing authority to "forward one copy of the application and one copy of the applicant's fingerprints" to the State Police "[w]ithin seven days of the receipt of a completed application." Within 30 days, the State Police must "advise the

licensing authority, in writing, of any disqualifying criminal record . . . and whether there is reason to believe that the applicant is disqualified. . . ." *See* M.G.L. c. 140, §§ 129B(2), 131(e).

27.     The licensing statutes provide that the licensing authority "shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing; provided, however, that no such license [or card] shall be issued unless the colonel has certified, in writing, that the information available to him does not indicate that the possession of a [firearm] by the applicant would be in violation of state or federal law." *See* M.G.L. c. 140, § 129B(3); *id.* § 131(e).

28.     Once issued, a LTC or FID is valid for five to six years. *See* M.G.L. c. 140, §§ 129B(9), 131(i). To renew a LTC or FID, a person submits an application to the licensing officer. *See id.* §§ 129B(1), 131(d). Significantly, if a person has "applied for renewal before the [LTC or FID] expired," then the LTC or FID "shall remain valid . . . until the application for renewal is approved or denied." *Id.* §§ 129B(9), 131(i).

### THE BOSTON POLICE DEPARTMENT'S POLICY, CUSTOM OR PRACTICE OF DELAYING THE PROCESSING OF LICENSE APPLICATIONS

29.     Defendant Commissioner Cox is the "licensing authority" responsible for issuing FIDs and LTCs to individuals in the City of Boston pursuant to M.G.L. c. 140 §§ 129B, 131, as set forth above. *See* M.G.L. c. 140, § 121.

30.     Defendant Commissioner Cox carries out the function of issuing and administering FIDs and LTCs by means of the Licensing Unit, which is an administrative division of the Boston Police Department.

31.     In March 2020, at the start of the COVID-19 pandemic, the Licensing Unit stopped processing or accepting applications for FIDs and LTCs. When it resumed operations, it placed a large backlog of individuals who sought to apply on a "wait list," which quickly

numbered into the thousands. Applicants had to wait for months on the wait list in order to make appointments to submit their applications and other materials and provide their fingerprints. It was only then that they formally "began" the licensure process, for which the statute allows a maximum of 40 days.

32.      In 2021, Plaintiffs Commonwealth Second Amendment and Second Amendment Foundation, along with several aggrieved individuals, challenged the Licensing Unit's delay in processing FID and LTC applications in an action before this Court. *See* ECF Doc. No. 4, First Amended Complaint (filed Jan. 20, 2021) *and* ECF Doc. No. 95, Second Amended Complaint (filed Apr. 30, 2021) *in Alves, et al. v. McNamara, et al.*, No. 1:20-cv-11933-DPW (D. Mass. filed Oct. 27, 2020). The parties conducted discovery and ultimately agreed to settle the case at mediation. *See* ECF Doc. No. 108, Report (filed Jul. 26, 2021). Pertinently, the parties' settlement involved the City of Boston's agreement to a timeline for eliminating the wait list by October 31, 2021.

33.      Unfortunately, however, the Licensing Unit has now returned to a policy, custom or practice of doing essentially the same thing it was doing before—making people wait for months to complete the application process. As detailed herein, when individuals apply for FIDs or LTCs, the Licensing Unit tells them that they must wait for an appointment in order to submit their applications and fingerprints. They then wait many months for the Licensing Unit to contact them and schedule that appointment. The Licensing Unit also makes individuals applying to renew FIDs and LTCs likewise wait many months.

**INJURY TO PLAINTIFF RUDOLPH WHITE**

34.      Plaintiff Rudolph White submitted an application for a LTC to the Licensing Unit on July 12, 2023, using an online portal on the Police Department's website. He submitted a

completed application form, and he also submitted documentation of the required training and copies of his identification. He paid the $100 application fee.

35.     On July 12, 2023, shortly after submitting his application, Mr. White received an email from the Licensing Unit that acknowledged his submission and informed Mr. White that he would "receive a receipt once the Licensing Unit has processed your application."

36.     Mr. White has received no further communications from the Licensing Unit. Pertinently, the Licensing Unit has not contacted him to schedule the taking of fingerprints or an interview. As of the date of the original Complaint, it had been 50 days since Mr. White submitted his application, and as of the date of this Amended Complaint it has been 153 days. However, Defendant had not started the state background check process, which the state will then have 30 days to complete. Mr. White has no idea when he will be able to obtain a LTC.

**INJURY TO PLAINTIFF ROBERT COX**

37.     Plaintiff Robert Cox submitted an application for a LTC to the Licensing Unit on February 20, 2023, when his attorney emailed the application and supporting documentation to a supervising officer. Mr. Cox had previously tried to apply using a link from the Police Department's website, but neither he nor his attorney were able to do so successfully. Mr. Cox submitted a completed application form, and he also submitted documentation of the required training and copies of his identification.

38.     On February 22, 2023, the supervising officer in the Licensing Unit acknowledged receiving the application and said the Licensing Unit would "contact him when it's time for him to come in for prints."

39.     On May 10, 2023, having received no further communication, Mr. Cox's attorney contacted the supervising officer in the Licensing Unit for an update. The officer advised that the

Licensing Unit was currently working on units from December (i.e. about six months prior) and that Mr. Cox's application would be "processed eventually."

40.     As of the original Complaint, it had been 192 days since Mr. Cox submitted his application, but Defendant had not started the state background check process, which the state would then have 30 days to complete. After the original Complaint's filing, the Licensing Unit contacted Mr. Cox and scheduled an appointment for him to provide his fingerprints on October 11, 2023, which was 233 days after Mr. Cox first submitted his application.

41.     Even after Mr. Cox ultimately obtains a LTC, he will again face unjustified and untenable delays when he seeks to renew it in the future, in the absence of relief from this Court.

## INJURY TO PLAINTIFF KENLEY EXUME

42.     Plaintiff Kenley Exume submitted an application for a LTC to the Licensing Unit on April 24, 2023, by delivering it in person at the Police Department's headquarters. He submitted a completed application form, and he also submitted documentation of the required training and copies of his identification. He paid the $100 application fee.

43.     At the time Mr. Exume submitted his application, personnel in the Licensing Unit told him that the Licensing Unit would contact him in the future to schedule an appointment to submit fingerprints. Mr. Exume would have provided fingerprints and an interview at the time he submitted his application materials if personnel in the Licensing Unit had been willing.

44.     Mr. Exume has received no further communications from the Licensing Unit. Pertinently, the Licensing Unit has not contacted him to schedule the taking of fingerprints or an interview. As of the date of the original Complaint, it had been 129 days since Mr. Exume submitted his application, and as of the date of this Amended Complaint it has been 232 days. However, Defendant has not started the state background check process, which the state will then have 30 days to complete. Mr. Exume has no idea when he will be able to obtain a LTC.

## INJURY TO PLAINTIFF LESLIE GOOD

45.     Plaintiff Leslie Good submitted an application for a LTC to the Licensing Unit on February 6, 2023, using an online portal on the Police Department's website. She submitted a completed application form, as well as documentation of the required training and copies of her identification. She paid the $100 application fee.

46.     Ms. Good contacted the Licensing Unit by email about two weeks later, on February 16, 2023. An employee told her that it would take "a few months" for an officer to contact her to set up an appointment to submit fingerprints because they were "very backed up."

47.     On June 15, 2023, Ms. Good had not heard anything further, so she again contacted the Licensing Unit by email to ask about the status of her application. She received no response. Ms. Good contacted the Licensing Unit twice more, on June 23, 2023 and July 10, 2023, but again received no response.

48.     As of the date of the original Complaint, Ms. Good had received no further communications from the Licensing Unit, and it had been 206 days since she had submitted her application. Defendant had not started the state background check process, which the state would then have 30 days to complete.

49.     After the filing of the original Complaint, the Licensing Unit contacted Ms. Good on September 4, 2023—210 days after she had first submitted her application—and scheduled an appointment for her to provide her fingerprints later that week. Ms. Good received her LTC on October 27, 2023, which was 263 days after she had first submitted her application.

50.     In the absence of relief from this Court, Ms. Good will again face unjustified and untenable delays when she seeks to renew her LTC in the future.

**INJURY TO PLAINTIFF GIUSEPPE BARLETTA**

51.    Plaintiff Giuseppe Barletta holds a LTC issued by the Boston Police Department. Mr. Barletta's LTC has an expiration date of February 4, 2024.

52.    On November 1, 2023, Mr. Barletta attempted to contact the Licensing Unit in order to submit his renewal application. First, Mr. Barletta went to the Licensing Unit's website, where it had previously been possible to submit an application online, but learned it was no longer possible to submit an application in this manner. Mr. Barletta then used an email address that he had used previously to communicate with the Licensing Unit, but he received an error message back indicating the address was no longer valid. Mr. Barletta then attempted to reach the Licensing Unit by telephone, but was never able to either reach anyone or leave a voicemail. Finally, Mr. Barletta contacted the office of Commissioner Cox directly, which was able to transfer him to a person who advised him that he would need to submit his renewal application in person at the Licensing Unit.

53.    On November 2, 2023, Mr. Barletta submitted his renewal materials in person at the Licensing Unit. The Licensing Unit did not provide him with a receipt reflecting the submission of his renewal application, and so he has no documentation showing that he submitted his renewal application prior to his LTC's expiration date.

54.    On December 4, 2023, Mr. Barletta checked online with the Division of Criminal Justice Information Systems ("DCJIS") and saw that there was no indication that his renewal application had been submitted. Mr. Barletta then contacted the Licensing Unit by telephone and was told that the Licensing Unit is currently processing applications from April. Mr. Barletta is worried that he will be unable to show that he submitted a renewal application after his LTC expires and will accordingly be subject to the risk of arrest and prosecution unless he surrenders possess of his firearms and ammunition.

## INJURY TO ORGANIZATIONAL PLAINTIFFS

55.     Plaintiffs Rudolph White, Robert Cox, Kenley Exume, Leslie Good and Giuseppe Barletta are all members of Plaintiffs Commonwealth Second Amendment, Inc., Firearms Policy Coalition, Inc. and Second Amendment Foundation.

56.     Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A has members and supporters throughout (and beyond) Massachusetts, including all of the individual plaintiffs. Comm2A brings this action on its own behalf and on behalf of its members.

57.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. The nature and purposes of FPC are to create a world of maximal human liberty and freedom; to promote and protect individual liberty, private property, and economic freedoms; and to conduct all other activities as permissible under law. FPC further seeks to protect, defend, and advance the People's rights especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms; protect, defend, and advance the means and methods by which individuals may exercise their rights, including but not limited to the acquisition, collection, transportation, exhibition, carry, care, use, and disposition of arms.

58.     FPC has members in both the Commonwealth of Massachusetts and the City of Boston. FPC's members include individuals who are not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm or ammunition. FPC's members are adversely and directly harmed by Defendant's practice of making individuals applying for

firearms licenses wait many months to submit fingerprints and advance their applications forward, and in the same basic manner as the individual Plaintiffs here. The interests that FPC seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, FPC sues on behalf of its members, including the individual Plaintiffs herein.

59.     Plaintiff Second Amendment Foundation, Inc. ("SAF") has over 650,000 members and supporters nationwide, including in both the Commonwealth of Massachusetts and the City of Boston. All of the individual plaintiffs are members of SAF. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens. SAF brings these claims on its own behalf and on behalf of its members.

60.     Defendant's delays in processing firearms license applications injure the individual members and supporters of Plaintiffs Comm2A, FPC and SAF by subjecting them to the same delays complained of herein. Delays are injuries that are inherently perishable, as individuals ultimately outlast the delay and obtain their licenses. As such, it may be necessary for Comm2A, FPC and SAF to assert claims on behalf of additional individuals in the future.

### CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983

61.     As alleged above, and on further information and belief, Defendant, in his role as the Police Commissioner responsible for accepting and processing applications for FIDs and LTCs in Boston, has adopted a policy, custom or practice of delaying the processing of those applications by many months. Specifically, and as alleged, Defendant requires individuals

applying for FIDs and LTCs to wait for many months in order to submit samples of their fingerprints and to otherwise complete their applications. This delays the processing of individuals' license applications. Defendant similarly requires individuals applying to renew licenses to wait main months, leaving them at risk of arrest or prosecution.

62.     For the time that they must wait—which far exceeds the 40 days contemplated by the General Court when it enacted the statutes governing FID and LTC issuance—Defendant's policy, custom or practice completely prohibits law-abiding individuals from lawfully acquiring, possessing or carrying firearms for the purpose of protecting their selves and their family families (or indeed, for any other lawful purpose).

63.     The Defendant's policy, custom or practice, detailed above, has and continues to directly or effectively prohibit the Plaintiffs and the Plaintiffs' members, and other similarly situated members of the public, from acquiring, possessing or carrying firearms or ammunition, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

64.     The Defendant's policy, custom or practice, and/or the injury complained of here (substantial delays in processing license applications) is likely to recur in the absence of relief from this Court. This is demonstrated by, among other things, Defendant's recent use, and only temporary abandonment of, a "wait list" for pending applications, notwithstanding Defendant's promise to the contrary.

### PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

   i.      a preliminary and/or permanent injunction restraining Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them, from requiring applicants for FIDs and LTCs to wait for future appointments to submit samples of their fingerprints and otherwise fully complete their applications;

ii.       a preliminary and/or permanent injunction directing Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them, to take fingerprint samples at the time that individuals apply for FIDs and LTCs, or promptly thereafter;

iii.      a preliminary and/or permanent injunction directing Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them, to process applications to renew FIDs and LTCs promptly and to issue receipts reflecting their submission;

iv.      a declaratory judgment that Defendant's delays in taking fingerprints and otherwise processing FID and LTC applications prevents the lawful possession of firearms and thus violate the Second and Fourteenth Amendments;

v.       such other and further relief, including injunctive relief and nominal damages, against the Defendant, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

vi.      attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dated: December 12, 2023

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

 /s/ David D. Jensen
David D. Jensen, Esq.
Admitted *Pro Hac Vice*
David Jensen PLLC
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
david@djensenpllc.com

Jason A. Guida
BBO # 667252
Principe & Strasnick, P.C.
17 Lark Avenue
Saugus, MA 01960
Tel: 617.383.4652
Fax: 781.233.9192
jason@lawguida.com

<u>**C**ERTIFICATE OF **S**ERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on Dec. 12, 2023.

 /s/ David D. Jensen

David D. Jensen
